UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAYLOR ELLEBY,

                              Petitioner,

                  -v.-

R. COVENY,

                              Respondent.

18 Civ. 2694 (KPF)

**OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Petitioner Taylor Elleby, who is proceeding *pro se* and is currently

detained at the Greene Correctional Facility in Coxsackie, New York, filed a

petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on March 26,

2018 (the "Petition"), against Respondent R. Coveny.[1]  Petitioner seeks review

of his conviction in New York State Supreme Court, New York County, of one

count of sex trafficking (N.Y. Penal Law § 230.34), two counts of promoting

prostitution in the second degree (N.Y. Penal Law § 230.30(1)), and two counts

of promoting prostitution in the third degree (N.Y. Penal Law § 230.25(1, 2)).

Pursuant to a referral from this Court, United States Magistrate Judge Stewart

D. Aaron issued a 27-page Report and Recommendation dated November 15,

2018 (the "Report"), recommending that the Petition be denied.  The Court has

examined both the Report, Petitioner's November 30, 2018 and December 6

---

[1]    At the time that Petitioner initiated this action, he was confined at the Elmira
       Correctional Facility and Respondent is listed in the Petition as the then-authorized
       person having custody of Petitioner.  (Dkt. #1 at 1).

and 10, 2018 Objections to that Report (the "Objections"),[2] and the underlying record of the state court proceedings. The Court finds that the Report should be adopted in full and the Petition denied.

**BACKGROUND**[3]

The facts and procedural history leading up to the Petition are detailed in the Report. (*See* Report 2-12). Nonetheless, a summary of the relevant facts is useful to this Court's analysis.

The evidence at trial established the following: Petitioner occupied his deceased uncle's public housing apartment. (Report 2). On May 9, 2013, the police received a call from a woman, Latisha S., claiming that her daughter was being held hostage in an apartment in Manhattan. (*Id.* at 4). The police arrived at the apartment building and spoke to Ms. S. (*Id.*). Another woman with Ms. S. told the police that she had previously worked for Petitioner, but would not say what she did for him. (*Id.*). During this conversation, Petitioner left the apartment building, prompting the former employee to identify Petitioner. (*Id.*). The police detained Petitioner, and went to his apartment. (*Id.*). When they knocked, a woman ("Victim 2") opened the door, allowing the

---

[2]    The Report provided that all objections were to be filed on or before November 29, 2018. (Dkt. #44). Petitioner's November 30, 2018 Objections appear to have been sent on November 27, 2018 (Dkt. #46), and Petitioner's December 6, 2018 Objections appear to have been sent on November 28, 2018 (Dkt. #47). Both of these objections were thus timely under the prison mailbox rule. *See Noble* v. *Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Petitioner's December 10, 2018 Objections were mailed on December 3, 2018 and are thus untimely. (Dkt. #48). The Court will consider these Objections nonetheless. *See Sanford* v. *Lee*, No. 11 Civ. 5714 (JPO), 2012 WL 3062692, at *1 (S.D.N.Y. July 25, 2012) (considering untimely objection filed by *pro se* petitioner).

[3]    This Opinion draws its facts largely from the Report (Dkt. #44), the Objections (Dkt. #46, 47, 48), and the state court record (Dkt. #24, 25).

police to enter the apartment, which contained two other young women, a toddler, an infant, and multiple bare mattresses. (*Id.* at 4-5). While he was being booked, Petitioner stated that he lived in the apartment the police had visited. (*Id.* at 5). The police then received a search warrant for that location, where they seized several bank cards, cellular telephones, and a laptop computer. (*Id.*).

At trial, Victim 2 testified that she was 17 on the day the police visited Petitioner's apartment. (Report 5). She initially refused to answer questions, invoking her rights under the Fifth Amendment and claiming that she was in love with Petitioner. (*Id.*). The presiding judge instructed Victim 2 that she had been granted full immunity and must answer any questions truthfully. (*Id.* at 6). Victim 2 then testified that she had entered into a sexual relationship with Petitioner after running away from home. (*Id.*). Petitioner allowed Victim 2 to stay in his apartment, and encouraged her to sell drugs and provide him with the revenue. (*Id.*). Beginning in February 2013, when she was 17 years old, Victim 2 began having sex with strangers for money and remitting the proceeds to Petitioner. (*Id.*). The prosecution questioned Victim 2 about her prior testimony before the grand jury, in which she testified that Petitioner advertised her services on Craigslist and Backpage.com, two internet sites commonly used to advertise the sex trade. (*Id.* at 3, 6). Victim 2 testified that her prior testimony had been truthful. (*Id.* at 6).

Another woman, Victim 1, also testified at trial. Victim 1 testified that she had been prostituting herself and abusing drugs since she was 16 years

old. (Report 6). Victim 1 had worked for a pimp other than Petitioner from 2007 to 2011. (*Id.*). In 2012, Victim 1 met Petitioner and began a sexual relationship with him. (*Id.* at 7). She gave Petitioner the earnings from her prostitution. (*Id.*). Victim 1 sometimes told Petitioner that she wanted to stop prostituting herself. (*Id.*). She testified that Petitioner would occasionally encourage her to stop, but on other occasions would insult her and hit her. (*Id.*). Victim 1 eventually became pregnant with Petitioner's child, at which point Petitioner threw her out of his apartment. (*Id.*). After the baby was born, Victim 1 returned to Petitioner, claiming she was out of options. (*Id.*). Petitioner told her that she could stay in his apartment, but advised Victim 1 that she knew what she would have to do to stay; Victim 1 understood this to mean that she would be required to prostitute herself and give Petitioner her earnings in order to stay. (*Id.*).

Several other women living in the apartment also worked as prostitutes for Petitioner. (Report 7). Petitioner and Victim 1 would advertise their services online, using debit cards paid for by Petitioner to pay the advertising fees. (*Id.* at 7-8). Petitioner would collect the revenues generated by the women every night, and give them small allowances for necessities. (*Id.* at 7). Testimony was introduced at trial that Petitioner would hit the women living in his apartment, and that he had threatened Victim 1, telling her that he would take her baby away and the courts would grant him custody because she was a prostitute. (*Id.* at 8).

The prosecution also introduced evidence tying online advertisements for Victims 1 and 2 to debit cards and email addresses in Petitioner's name. (Report 9). Text messages between and among Victims 1, 2, and Petitioner substantiated much of the two Victims' testimony, including Petitioner's demands for money. (*Id.* at 8).

Petitioner testified in his own defense at trial, claiming that the alleged victims had rented the apartment from him, and that he had not known they were prostitutes. (Report 9). He admitted to having a romantic relationship with Victim 1, but denied ever acting as a pimp. (*Id.*). Petitioner testified that any demands for money in text message conversations were related to a mutual drug business, not prostitution. (*Id.*). During the cross-examination of Petitioner, the prosecution introduced a video recording that had been uploaded to YouTube several years earlier. (*Id.*). In it, Petitioner described his life as a pimp and how he enforced productivity among his prostitutes. (*Id.*). Petitioner admitted that he had made the recording, but testified that it was a joke. (*Id.* at 9-10).

Petitioner was convicted of one count of sex trafficking, two counts of promoting prostitution in the second degree, and two counts of promoting prostitution in the third degree. (Report 10). Petitioner was acquitted of one count of sex trafficking. (*Id.*). Prior to sentencing, Petitioner moved to set aside the verdict, claiming that one of the jurors had acted improperly by failing to disclose that he lived in the same apartment building as one of the prosecutors who tried the case. (*Id.*). The presiding judge spoke to the juror off the record

and denied the motion after concluding that the juror did nothing improper and was not prejudiced by the interaction. (*Id.*). Petitioner was sentenced to an aggregate term of 10 2/3 to 32 years of imprisonment. (*Id.*).

In his direct appeal, Petitioner argued that the trial court erred in: (i) allowing the prosecution to call Victim 2 as a hostile witness, to cross-examine her about her grand-jury testimony, and to introduce that testimony as evidence; (ii) allowing the prosecution to impeach him with the YouTube video; and (iii) imposing an unreasonable sentence. (Report 10-11). The Appellate Division, First Department, affirmed the criminal judgment. (*Id.*). Petitioner sought leave to appeal to the New York Court of Appeals based on the impeachment of Victim 2 with her grand jury testimony, but he was denied leave to appeal. (*Id.* at 11).

Petitioner also filed multiple motions to vacate the judgment under New York Criminal Procedure Law § 440.10. The first motion alleged, amongst other things: (i) prosecutorial misconduct during the grand-jury phase; (ii) a deprivation of Petitioner's right to confront his accusers; and (iii) misconduct on the part of the juror who did not disclose that he lived in the same apartment building as the trial prosecutor. (Report 11). The second motion alleged: (i) the trial court erred in permitting the prosecution to impeach Victim 2; (ii) the indictment was defective because Victims 1 and 2 were compelled to testify before the grand jury; (iii) evidence seized on Petitioner's person was the fruit of an illegal arrest; and (iv) Petitioner had received ineffective assistance of counsel. (*Id.*). Both motions were denied by the presiding judge. (*Id.*).

6

Petitioner sought to appeal the denial of his second § 440.10 motion, but was denied leave to do so. (*Id.* 11-12).

Next, Petitioner filed an application for a writ of error coram nobis in the First Department. (Report 12). Petitioner argued that his appellate counsel had been ineffective for failing to argue that trial counsel was ineffective for failing to: (i) move to dismiss the indictment; (ii) move to dismiss on the ground that the prosecution's witnesses testified under duress; (iii) object to the prosecution's impeachment of Victim 2; and (iv) object to the use of evidence obtained from an allegedly false arrest warrant. (*Id.*). The First Department denied the application and the Court of Appeals denied leave to appeal. (*Id.*).[4]

On March 26, 2018, Petitioner filed his Petition with this Court, asserting seven arguments in support of his claim for relief: (i) the victims were coerced to testify against him; (ii) the evidence against him was the fruit of an illegal seizure; (iii) his privilege against self-incrimination was violated; (iv) he was deprived of a right to confront the witnesses against him; (v) his trial counsel was ineffective on various grounds; (vi) his appellate counsel was ineffective on various grounds; and (vii) there was misconduct by one of the jurors. (Report 12). On April 23, 2018, the Court referred the case to Magistrate Judge Aaron. (Dkt. #11).

---

[4] Petitioner has represented to the Court that he has applications pending with the New York Court of Appeals arising from the denial of the § 440.10 motion and the writ of error coram nobis. (Dkt. #4).

Judge Aaron issued the Report on November 15, 2018, recommending that the Petition be denied in its entirety. (Dkt. #49). As to Petitioner's first claim that statements made by Victims 1 and 2 during the grand jury proceedings and at trial were coerced, Judge Aaron determined that Petitioner's claim was procedurally barred because it had not been raised on direct appeal. (Report 15-16). Even if it were not procedurally barred, Judge Aaron determined that the claim of coerced testimony would fail because the trial judge properly compelled the witnesses to testify after they had been granted immunity. (*Id.* at 16-18).

Next, Judge Aaron recommended denying Petitioner's second claim, that his arrest had been unsupported by probable cause. (Report 18-19). Judge Aaron determined that Fourth Amendment claims were only cognizable on habeas review if the state fails to offer any corrective mechanism to redress the alleged violation, and New York clearly provided such corrective procedural mechanisms here. (*Id.*).

Third, Judge Aaron concluded that Petitioner's claim that the introduction of the YouTube video violated his right against self-incrimination failed, because it was procedurally barred, and Petitioner had not been coerced into creating and uploading the video. (Report 20).

Fourth, Judge Aaron recommended that the Court deny Petitioner's claim that cross-examining Victim 2 about her grand jury testimony violated his rights under the Confrontation Clause, because Victim 2 appeared at trial and was subject to cross-examination by Petitioner. (Report 20-21).

Fifth, Judge Aaron reviewed Petitioner's claims for relief based on the alleged ineffective assistance of his trial counsel, and determined the claims lacked merit. (Report 21-23). Judge Aaron found that the claims were procedurally barred because they had not been exhausted in accordance with state law: Petitioner had not presented any challenge to his trial counsel's effectiveness on direct appeal and was thus barred from raising the claims in a post-judgment motion. (*Id.* at 21-22). And Petitioner was not excused from defaulting on his claims. (*Id.*). Even if the claims were considered, Judge Aaron determined that they lacked merit because trial counsel provided objectively reasonable representation, and any alleged deficiencies in his representation were either the result of strategic decisions or the failure to make meritless arguments. (*Id.* at 23).

Sixth, Judge Aaron ruled that Petitioner's claim premised on the ineffectiveness of his appellate counsel also failed. (Report 24). Judge Aaron determined that the state court that had previously denied Petitioner's claim did not unreasonably apply clearly established federal law. (*Id.*). Further, the fact that Petitioner's trial counsel was not ineffective would preclude a finding that appellate counsel was ineffective for failing to advance that argument. (*Id.*).

Finally, Judge Aaron recommended that Petitioner's juror misconduct claim be denied. (Report 24-26). Judge Aaron concluded that the claim was procedurally defaulted and would otherwise fail on the merits because the state court did not unreasonably apply clearly established federal law in determining

that the juror was not prejudiced by living in the same apartment building as a lawyer for the prosecution. (*Id.*).

Petitioner filed three letter objections to the Report on November 30, 2018 (Dkt. #46), December 6, 2018 (Dkt. #47), and December 10, 2018 (Dkt. #48).

## DISCUSSION

**A.    Applicable Law**

**1.    Reviewing the Report and Recommendations of a Magistrate Judge**[5]

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted). A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

---

[5]    In his Objections, Petitioner repeatedly takes issue with the fact that Magistrate Judge Aaron authored the Report, instead of this Court. (Dkt. #46, 47). The Court advises Petitioner that, as it is permitted to do under 28 U.S.C. § 636, the Court referred the case to Judge Aaron for a report and recommendation on April 23, 2018. (Dkt. #11). The Court reviews Judge Aaron's Report in accordance with the standards laid out in this Opinion.

When a timely and specific objection has been made, the district court is obligated to review the contested issues *de novo*.  *See* Fed. R. Civ. P. 72(b)(3); *Hynes* v. *Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  However, where objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error.  *Walker* v. *Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).  Although *pro se* filings are read liberally and interpreted "to raise the strongest arguments that they suggest" *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted), "even a *pro se* party's objections ... must be specific and clearly aimed at particular findings in the magistrate's proposal[,]" *DiPilato* v. *7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citation omitted).

### 2.  Reviewing State Court Decisions Under the Antiterrorism and Effective Death Penalty Act ("AEDPA")

Under AEDPA, a federal court cannot grant a petition for a writ of habeas corpus based on a claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision: (i) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (ii) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen* v. *Pinholster*, 563 U.S. 170,

181 (2011) (quoting *Woodford* v. *Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Harrington* v. *Richter*, 562 U.S. 86, 101 (2011)

(quoting *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004)).

Federal law is "clearly established" when it is expressed in "the holdings,

as opposed to the dicta, of [the Supreme Court's] decisions." *Howes* v. *Fields*,

565 U.S. 499, 505 (2012) (internal quotation marks omitted). A state court's

decision is "contrary" to clearly established federal law when the state court

"applies a rule that contradicts the governing law set forth in" a Supreme Court

opinion or "confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a … different

[result]." *Williams* v. *Taylor*, 529 U.S. 362, 405-06 (2000). And a state court's

decision can only be considered "unreasonable" if "there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with

[the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102; *see also*

*Woods* v. *Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (per curiam)

(explaining that AEDPA only allows federal habeas courts to overturn state

court decisions "when there could be no reasonable dispute that they were

wrong"); *Vega* v. *Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (same).

When a federal court reviews a state court's factual determinations,

those decisions "shall be presumed to be correct," and that presumption can

only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1);

*see also McKinney* v. *Artuz,* 326 F.3d 87, 101 (2d Cir. 2003).

**B.    Analysis**

For the most part, Petitioner's Objections are either conclusory, or mere attempts to rehash arguments previously set forth in the Petition. The Court reviews the portions of the Report with which these more superficial Objections take issue for clear error. Construing the Petition liberally, however, Petitioner has raised three objections that are specific and clearly aimed at particular findings in the Report:

> (i)    The Report failed to address Petitioner's application that his habeas petition be held in abeyance, pending resolution of both his § 440.10 motion and his application for a writ of error coram nobis before New York state courts;

> (ii)   The Report erred in stating that Petitioner's claim of coerced testimony was procedurally barred; and

> (iii)  Judge Aaron lacked a sufficient factual record to conclude that juror misconduct did not warrant habeas relief.

Upon *de novo* review of the portions of the Report to which Petitioner specifically objects, the Court concludes that Petitioner has failed to establish that habeas relief is merited.

### 1.    The Court Will Not Hold the Petition in Abeyance to Allow Petitioner to Exhaust Claims

On March 27, 2018, just one day after he filed the Petition, Petitioner requested that the Court hold his petition in abeyance pending the issuance of two state court decisions concerning a § 440.10 motion and an application for a writ of error coram nobis that he had filed in New York state courts. (Dkt.

#4).  Petitioner explained that these documents asserted that his trial counsel had been ineffective because he had failed to: (i) request a suppression hearing regarding evidence seized from Petitioner's person when he was arrested; and (ii) abide by the trial court's ruling that the prosecution could not introduce evidence of Petitioner's juvenile offenses.  (*Id.*).[6]  As Petitioner noted in his Objections, neither the Court nor Judge Aaron addressed Petitioner's letter requesting a stay at the time it was filed, nor was it addressed in the Report.  (Dkt. #46 at 5-6).  Accordingly, the Court considers it for the first time here.

In *Rhines* v. *Weber*, the Supreme Court recognized that, if a habeas petition asserted both exhausted and unexhausted claims, the district court could grant a stay, or it could hold the petition in abeyance pending the exhaustion of the unexhausted claims:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state court, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

544 U.S. 269, 277 (2005).  Thus, in evaluating whether a petition should be held in abeyance, the Court must determine if those ineffective assistance of counsel claims that Plaintiff claims to be unexhausted are plainly meritless.

---

[6]     The Court accepts as true for purposes of this Opinion that these matters are indeed pending before New York state courts.

Sixth Amendment claims for ineffective assistance of counsel are evaluated under the two-pronged test established in *Strickland* v. *Washington*, 466 U.S. 668 (1984). First, Petitioner must show that counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687-88. During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Courts must make allowances for counsel's strategic choices and apply "a heavy measure of deference" to counsel's judgments. *Id.* at 691. Next, Petitioner must establish that counsel's errors resulted in actual prejudice. *See Strickland*, 446 U.S. at 694. A petitioner satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In certain circumstances, where it is difficult to measure the precise effect of the errors committed by trial counsel against the weight of the evidence, prejudice may be presumed. *See Strickland*, 466 U.S. at 692. That said, a court is not required to conduct a *Strickland* inquiry in a particular order. *See id.* at 697. If the defendant does not successfully establish either the performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot. *See id.*

Petitioner's claim that his trial counsel was ineffective in failing to move to suppress certain evidence seized on his person during his arrest is plainly meritless for the simple reason that his trial counsel *did* move to suppress that

evidence.  (Dkt. #25-1 at 12-16 (December 4, 2013 Trial Tr. 2-6)).  The trial

court held an evidentiary hearing concerning the motion to suppress and

determined that the evidence was admissible.  (Dkt. #25-2 at 14-16

(December 6, 2013 Trial Tr. 131-33)).  Because trial counsel did not commit the

error with which Petitioner charges him, Petitioner's ineffective assistance

claim is meritless.

The Court also finds meritless Petitioner's claim that his trial counsel

was ineffective in failing to abide by the trial court's ruling that the prosecution

could not introduce evidence of Petitioner's juvenile offenses.  As Petitioner

notes, he received a misdemeanor conviction in 1994 for criminal trespass, and

a felony conviction in 1997 for gunpoint robbery.  The trial court ruled that the

prosecution was excluded from introducing evidence of Petitioner's 1994

conviction, but could elicit the fact that Petitioner had a 1997 felony conviction.

(Dkt. #25 at 56-57 (November 27, 2013 Pretrial Conference Tr. 56-57)).  The

prosecution could not, however, elicit the nature of the 1997 felony conviction.

(*Id.*).  Notably, the court did not preclude the *defense* from eliciting any facts

about the 1997 conviction.  (*Id.*).

Petitioner is correct that his trial counsel began his direct examination of

Petitioner by briefly eliciting the facts that he had a 1994 misdemeanor

conviction for criminal trespass and a 1997 felony conviction for gunpoint

robbery.  (Dkt. #25-5 at 107-09 (December 10, 2013 Trial Tr. 576-78)).

Petitioner is incorrect, however, that his trial counsel's decision to elicit such

testimony amounted to ineffective assistance of counsel under the Sixth

Amendment. The trial court's ruling merely prevented the prosecution, and not the defense, from introducing this evidence — drawing the sting, as it were. And, applying the presumption of reasonable assistance, trial counsel's strategic decision to introduce these facts was well within the range of reasonable professional assistance. Petitioner's trial strategy was to admit that he had engaged in criminal wrongdoing with some of the alleged victims, such as selling drugs, but to deny that he had engaged in prostitution. (*See* Report 9). Trial counsel attempted to further that strategy by providing information about Petitioner's prior crimes, to preempt the jury from inferring that these crimes were related to prostitution. And during summation, trial counsel argued that Petitioner's willingness to admit to prior wrongdoing made him more credible when he denied the crimes at issue at trial. (Dkt. #25-6 at 85-96, 121 (December 13, 2013 Trial Tr. 679-80, 705)). This sort of strategic decision does not amount to ineffective assistance. *See Yarborough* v. *Gentry*, 540 U.S. 1, 9 (2003) (concluding that counsel's "calculated risk" of "candidly acknowledging his client's shortcomings" to "buil[d] credibility with the jury and persuade[] it to focus on the relevant issues in the case" not ineffective).

Even if Petitioner's trial counsel had been ineffective, the Court concludes that the second prong of the *Strickland* analysis could not be met, because there is no reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 446 U.S. at 694. The evidence at trial against Petitioner was overwhelming. Whatever slight prejudice the information concerning Petitioner's prior

convictions may have had, there is no reasonable likelihood that it had a significant, let alone definitive, impact on the jury's verdict.

Because Petitioner's unexhausted claims lack merit, the Court cannot grant him a stay. The Court thus denies the claims on their merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### 2. Petitioner's Claims Based on Allegedly Coerced Testimony Are Procedurally Barred

Judge Aaron found that Petitioner's claims based upon allegedly coerced testimony were procedurally barred, because Petitioner had failed to raise them on direct appeal:

> Because Elleby's claims with respect to the alleged coerced statements by Victim 1 and Victim 2 were based on the record, Elleby would have had to raise them on direct appeal, and not in a later Section 440.10 motion. *See* § 440.10(2)(c). Elleby cannot now raise this claim in state court, because he already had the one appeal to which he was entitled. Therefore, this claim can be deemed exhausted, but procedurally barred. *See Ramirez* v. *Attorney General*, 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.")

(Report 15). Judge Aaron acknowledged that procedural default may be excused if a petitioner can demonstrate "'cause and prejudice for the procedural default,' or that the 'constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense.'"

(*Id.* at 15-16 (quoting *Dretke* v. *Haley*, 541 U.S. 386, 393 (2004))). But he determined that Petitioner had failed to establish cause or actual innocence. (*Id.*).

In his Objections, Petitioner does not argue that he exhausted his claims concerning coerced testimony by raising them on direct appeal, nor does he contest that these claims are procedurally defaulted. Instead, Petitioner argues that his procedural default is excused because his appellate counsel was ineffective in failing to raise a challenge to the coerced testimony on direct appeal. (Dkt. #46 at 1-3). Because his procedural default is excused, Petitioner argues, his claims concerning coerced testimony may be considered on habeas review.

The Court notes at the outset that the Report concluded that, even if the coerced testimony claims were reviewable, they should be rejected on their merits. (Report 16-18). Petitioner has failed to raise any timely or specific objections to this portion of the Report, and the Court concludes that Judge Aaron did not clearly err in finding that the claims lacked merit. Thus, even if the claims were not procedurally defaulted, they would be denied. Nevertheless, the Court will consider *de novo* the portions of the Report that recommend dismissing the claims concerning coerced testimony on the grounds that they were procedurally defaulted.

Petitioner is correct that ineffective assistance of counsel does constitute cause for procedural default. *Murray* v. *Carrier*, 477 U.S. 478, 488-89 (1986). If Petitioner were able to demonstrate that his appellate counsel provided

ineffective assistance in failing to present arguments concerning the allegedly coerced testimony on direct appeal, the claims based on coerced testimony would themselves be reviewable. But the First Department rejected Petitioner's arguments that his appellate counsel was ineffective on this ground. (Report 24; Dkt. #24-1 at 45). The Report determined that the state court did not unreasonably apply clearly established federal law in so doing. And this Court concludes that the Report did not clearly err in reaching that conclusion. Thus, Petitioner has failed to establish that his appellate counsel provided ineffective assistance and such assistance cannot constitute cause for his procedural default. Upon *de novo* review, the Court adopts the Report's recommendation that Petitioner's coerced testimony claims must be denied because they are procedurally defaulted.[7]

---

[7] On August 8, 2019, more than eight months after the expiration of the 14-day deadline for Petitioner to file objections to the Report, the Court received a letter from Petitioner asserting that he is actually innocent. (*See* Dkt. #51). The letter was not filed on the public docket because it contained sensitive and personal information concerning Petitioner and a witness at Petitioner's trial. (*Id.*). Actual innocence may excuse procedural default in a habeas proceeding, *Herrera* v. *Collins*, 506 U.S. 390, 404 (1993), and so the Court liberally construes Petitioner's letter as arguing that procedural default of any of his habeas claims should be excused. "To be credible ... a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup* v. *Delo*, 513 U.S. 298, 324 (1995).

Petitioner's letter reiterates arguments advanced at trial, in direct and collateral challenges to his conviction, and in his habeas petition: He cannot be guilty because he did not use physical force to make any woman prostitute herself. These arguments were rejected in the Report, and the Court concludes that Judge Aaron did not clearly err in his analysis. Petitioner also attached to his August 8, 2019 submission a new piece of evidence in the form of a letter purporting to be from Victim 2, one of the witnesses at his trial. The author of the letter claims to have lied under oath. Petitioner asks that this letter be considered as proof that he is actually innocent. Even if the Court were to accept this untimely argument and assume the letter is authentic, it does not suggest that Plaintiff is actually innocent. Even if the author of the letter were, as Petitioner claims, Victim 2, she does not state what she lied about under oath; she certainly does not say that she lied when she testified that she was prostituting

20

### 3. Petitioner's Juror Misconduct Claim Does Not Warrant Habeas Relief

In his Petition, Petitioner argues that he is entitled to habeas relief based upon juror misconduct at trial. (Dkt. #1 at 22-23). Specifically, Petitioner notes that one juror acted improperly by failing to disclose that he lived in the same apartment building as one of the prosecutors who tried the case. Once the situation came to light after trial, Petitioner filed a *pro se* motion to set aside the verdict. The trial court questioned the juror in an off-the-record proceeding, and concluded that the juror did nothing improper and "was not at all affected or prejudiced by the interaction." (Dkt. #25-8 at 41-42 (February 5, 2014 Sentencing Tr. 3-4)). Petitioner did not directly appeal this ruling. Judge Aaron determined that Petitioner's habeas claim premised upon juror misconduct was procedurally defaulted and would otherwise fail on the merits because: (i) the trial court's findings of fact are binding absent clear and convincing evidence to the contrary; and (ii) the trial court did not unreasonably apply clearly established federal law in denying Petitioner's motion to set aside the verdict. (Report 24-26).

Petitioner claims that Judge Aaron lacked a sufficient factual record to make a recommendation concerning the merits of the juror misconduct claim, because the trial court's interview with the juror in question was off the record. (Dkt. #46 at 4). Upon *de novo* review of this portion of the Report, the Court

---

herself with Petitioner's advertising assistance and providing Petitioner with the proceeds. And abundant other evidence supports his convictions. Thus, Petitioner has failed to establish that actual innocence excuses his default.

concurs with Judge Aaron. The trial court made a finding of fact that the juror was not at all affected or prejudiced by living in the same apartment building as the prosecutor. (Dkt. #25-8 at 41-42 (February 5, 2014 Sentencing Tr. 3-4)). This finding was supported by the prosecutor's assurance as an officer of the court that she did not know the juror in question. (*Id.*). In a habeas proceeding, this finding of the trial court must be accepted as true unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). The fact that the trial court's conversation with the juror occurred off the record is not clear and convincing evidence that the trial court's finding of fact was erroneous. Thus, the Court adopts the Report's recommendation that Petitioner's claims premised upon juror misconduct must be denied.

The remainder of Petitioner's objections are conclusory, general, or mere reiterations of arguments presented in the Petition. The portions of the Report that these objections address are reviewed for clear error. The Court finds that the Report's reasoning is sound and grounded in fact and law. Accordingly, the Court finds no clear error and adopts the Report in its entirety.

## CONCLUSION

The Court has thus reviewed portions of the Report *de novo*, and other portions for clear error. The Court agrees completely with Judge Aaron's thoughtful and well-reasoned Report and hereby adopts its reasoning by reference.

For the foregoing reasons, the Report is adopted in full, and the Petition is DENIED. The Clerk of Court shall dismiss this Petition and close the case.

Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). Pursuant to 28 U.S.C. § 1915(a), any appeal from this Order would not be taken in good faith; therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   October 16, 2019
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Copies of this Opinion and the Report were sent by first class mail to:*
Taye L. Elleby
14-A-1409
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051-0975